UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

CESAR HERNANDEZ-CONTRERAS,

Petitioner,

v.

WARDEN, et al.,

Respondents.

CAUSE NO. 3:26-CV-914-CCB-SJF

## **OPINION AND ORDER**

Immigration detainee Cesar Hernandez-Contreras, by counsel, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241, alleging that he is unlawfully confined in violation of the laws or Constitution of the United States. ECF 1. The respondents have answered the petition, and Hernandez-Contreras has filed a reply. ECF 6, ECF 7. The petition is ready to be decided.

BACKGROUND

Hernandez-Contreras is a Mexican citizen who entered the United States as an infant in 1994. ECF 1 at 1. From 2013 to 2025, he was convicted on eleven separate occasions, and, most recently, on May 8, 2025. ECF 6-1 at 1-4. On August 27, 2024, an immigration judge ordered Hernandez-Contreras removed but deferred removal to Mexico under the Convention against Torture. *Id.* at 5-9. On November 25, 2024, Immigration and Customs Enforcement (ICE) released him on conditions of supervision after unsuccessful attempts at removing him to El Salvador, Honduras, and Guatemala. *Id.* at 1-4. On January 7, 2025, ICE re-detained Hernandez-Contreras following his

release from criminal incarceration, and he is currently held at the Miami Correctional Facility. *Id.*; ECF 1 at 2.

On May 13, 2026, Hernandez-Contreras filed a motion to reopen removal proceedings, seeking to vacate the deferral of his removal to Mexico, and the government did not oppose the request. ECF 6-1 at 10-11. The immigration judge granted the motion to reopen and set a hearing for June 11, 2026, to discuss whether Hernandez-Contreras sought to withdraw his application for protection under the Convention against Torture (CAT). *Id.*

At this hearing, Hernandez-Contreras' counsel[1] explained that the government had filed the *pro se* motion to reopen removal proceedings on behalf of Hernandez-Contreras despite his representation by counsel. ECF 1-13. She explained that he had been deemed incompetent in the initial proceedings, did not understand what he filed, and did not wish to vacate the deferral of his removal to Mexico. *Id.* When the immigration judge asked why Hernandez-Contreras filed such a motion, counsel further explained that he had been detained since January 2026 but that counsel was unaware of his detention until the motion to reopen had been filed. *Id.* According to the counsel, Hernandez-Contreras believed that his options were to either remain in detention indefinitely, return to Mexico, or to be removed to a third country. *Id.* Under the belief that these were his only options, he preferred to return to Mexico. *Id.* The

---

[1] Attorney Daniel Chin is the petitioner's counsel of record in this case, but Attorney Ashley Brunko represented the petitioner at this immigration hearing. It appears that the same law firm employs both attorneys. *See* Flora Legal Group, https://floralegalgroup.com/ (last visited July 15, 2026).

immigration judge allowed Hernandez-Contreras to withdraw the motion to reopen and found that the prior order remained in effect. ECF 6-1 at 12-13. The parties reserved the right to appeal the decision with a deadline of July 11, 2026. *Id.*

SUBJECT MATTER JURISDICTION

The respondents first argue that the court lacks subject matter jurisdiction over Hernandez-Contreras' habeas petition under 8 U.S.C. § 1252(g) and § 1252(b)(9). This court has thoroughly considered its jurisdiction to review post-removal-order immigration detention. For the reasons previously stated, jurisdiction is secure. *See Liang, v. English*, No. 3:25CV1052 DRL-SJF, 2026 WL 835853, at *1 (N.D. Ind. Mar. 26, 2026) (Leichty, J.); *Pho v. Noem*, No. 3:25-CV-977-CCB-SJF, 2025 WL 3750684, at *1-*4 (N.D. Ind. Dec. 29, 2025) (Brisco, J.) (discussing § 1252(g)).

MERITS

Hernandez-Contreras argues that he is entitled to habeas relief because his removal is not reasonably foreseeable. On July 7, 2026, the respondents filed a response, arguing that Hernandez-Contreras was subject to mandatory detention under 8 U.S.C. § 1226 because the immigration court had reopened proceedings and because the time to appeal the order allowing Hernandez-Contreras to withdraw the motion to reopen had not yet expired. Given that the time to appeal has now expired, the court construes this argument as an argument that Hernandez-Contreras is now subject to mandatory detention because he remains within the 90-day removal period set forth in 8 U.S.C. § 1231(a)(1). Hernandez-Contreras replies that, based on the immigration judge's most recent order, the removal order from August 2024 remains intact and that he is no

3

longer within the removal period. He argues that, as a result, 8 U.S.C. § 1231(a)(6) and the standard of whether his removal will occur in the reasonably foreseeable future governs his detention.

Looking first at the text of the statutes, § 1226(a) allows for detention "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Section 1231, on the other hand, governs detention starting from a mandatory 90-day "removal period," defined by statute:

> The removal period begins on the latest of the following:
>
> (i) The date the order of removal becomes administratively final.
>
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
>
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B). If the noncitizen is not removed during the removal period, further detention is authorized "beyond the removal period" under certain conditions, *see* 8 U.S.C. § 1231(a)(6), subject to the limitation that a noncitizen's detention after the removal period is limited "to a period reasonably necessary to bring about that alien's removal from the United States." *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001). "[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699.

Under the plain language of the statutes, Hernadez-Contrera's detention does not comfortably fit under § 1226, authorizing detention "pending a decision on whether the alien is to be removed from the United States," because there is no question about

4

whether he is to be removed from the United States. 8 U.S.C. § 1226(a). That part of his

removal order remains undisturbed. Further, immigration law makes clear that the

question of removal is distinct from the question of withholding of removal under CAT.

*See Nasrallah v. Barr*, 590 U.S. 573, 582 (2020) ("[T]he immigration judge's or the Board's

ruling on a CAT claim does not affect the validity of the final order of removal and

therefore does not merge into the final order of removal" for purposes of the proper

standard of review); *see also Johnson v. Guzman Chavez*, 594 U.S. 523, 540 (2021) ("In

*Nasrallah* v. *Barr*, the majority explained that the grant of withholding relief under CAT

'does not disturb the final order of removal,' 'affect the validity of the final order of

removal,' or otherwise 'merge into the final order of removal.'"). It thus strikes the court

that while Hernandez-Contreras arguably disturbed the finality of the order deferring

removal to Mexico, he did not disturb the finality of the order compelling his removal

from the United States.

Seventh Circuit caselaw supports the idea that an immigration case can be

partially reopened in this manner. The Seventh Circuit has said that "the grant of a

motion to reopen vacates the previous order of deportation or removal and reinstates

the previously terminated immigration proceedings." *Bronisz v. Ashcroft*, 378 F.3d 632,

637 (7th Cir. 2004). But in a later case, the Seventh Circuit clarified that the situation in

*Bronisz* was one in which the entire case was reopened, and in other situations, a motion

to reopen does not necessarily reopen the entire case. *See Turkhan v. Lynch*, 836 F.3d 843,

847 (7th Cir. 2016) ("Turkhan urges that there is no such thing as a partial reopening

and that the Board therefore committed legal error when it purported to take such an

action. There is no basis for his contention."). Thus, an immigration case may be reopened without disturbing the finality of the underlying removal order.

Here, by filing the motion to reopen, Hernandez-Contreras sought only to vacate the deferral of his removal to Mexico, so the finality of the underlying removal order remained undisturbed. This situation, therefore, is like the one in *Johnson v. Guzman Chavez*, 594 U.S. 523 (2021). In *Guzman Chavez*, noncitizens had re-entered the United States after having been previously removed and, by statute, "the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed." *Id.* at 529-30 (quoting 8 U.S.C. § 1231(a)(5)). Yet, noncitizens subject to a reinstated order of removal may still seek withholding of removal if they assert a valid basis to fear being returned to the designated country of removal. *Id.* at 530-31. The Supreme Court held that these noncitizens in withholding-only proceedings still fell under § 1231, and not § 1226, based on the language of the statute. *Id.* at 534-35. Each had been "ordered removed" and those "reinstated orders are not subject to reopening or review." *Id.* at 534.

Further, the reinstated removal orders were "administratively final," meaning that the "*agency's* review proceedings" of the removal order is complete; "there is nothing left for the BIA to do with respect to the removal order other than to execute it." *Id.* at 534-35. The Court emphasized that withholding-only relief does not affect the underlying removal order. "If an immigration judge grants an application for withholding of removal, he prohibits DHS from removing the alien *to* that particular country, not *from* the United States. The removal order is not vacated or otherwise set

aside. It remains in full force, and DHS retains the authority to remove the alien to any other country authorized by the statute." *Id.* at 536.

In sum, the court finds that the removal order from August 2024 remained administratively final throughout Hernandez-Contreras' efforts to partially reopen immigration proceedings to address the deferral to Mexico. Consequently, the court finds that the removal period expired in November 2024 and that Section 1231(a)(6) has governed Hernandez-Contreras' detention since his immigration arrest on January 7, 2026.

Detention under § 1231(a)(6) is authorized only if removal is reasonably foreseeable. *See Zadvydas v. Davis*, 533 U.S. 678, 699 (2001). The Supreme Court has instructed that once removal is not reasonably foreseeable, "the court should hold continued detention unreasonable and no longer authorized by statute," though any release "may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions." *Id.* at 699–700.

In *Zadvydas*, the Supreme Court adopted a "presumptively reasonable period of detention" of six months in recognition of the Executive Branch's primary responsibility in foreign policy matters and the sometimes sensitive nature of repatriation negotiations that may call for difficult judgments regarding whether removal is reasonably foreseeable. *Zadvydas*, 533 U.S. at 689. "After this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the

7

reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* at 701.

Because Hernandez-Contreras has been in post-removal order detention for more than six months, the court turns to whether he has satisfied his initial burden to show that his removal will not occur in the reasonably foreseeable future. The parties do not dispute that Hernandez-Contreras cannot be removed to Mexico due to his order deferring removal. With respect to third country removals, Hernandez-Contreras states that his immediate period of detention spans six months without the government identifying or actively seeking to remove him to a third country. He also notes that efforts to remove him to El Salvador, Honduras, and Guatemala were unsuccessful in 2024 and contends that "ICE has historically managed to remove only a tiny fraction of non-citizens granted withholding or CAT to alternative countries." ECF 1 at 15.

This showing does not persuade the court that removal to a third country is not reasonably foreseeable. First, it is difficult to fault the government for its administrative delay on this record, which suggests that the government largely attempted to accommodate Hernandez-Contreras' removal preferences. Though the government may have assisted Hernandez-Contreras in filing the motion to reopen, the record contains no indication that government did so in bad faith. For example, while Hernandez-Contreras suggests that the government's actions were inappropriate because they resulted in the filing of a *pro se* motion while he had representation, there is no indication that the government knew that he had representation at that time. Indeed, the precise status of his representation in May 2026 remains unclear given that

his counsel specializes in immigration law, that initial removal proceedings had concluded in October 2024, and that his counsel represented at the hearing that she did not learn that he was detained until the motion to reopen was filed.

Further, though Hernandez-Contreras contends that he was deemed mentally incompetent for initial removal proceedings in 2024, there is no indication that the government was aware that he was mentally incompetent in May 2026. Some instances of incompetency are temporary or intermittent, and that appears to be the case with Hernandez-Contreras; significantly, incompetency did not prevent Hernandez-Contreras from being convicted on eleven separate occasions since 2013 with the most recent conviction postdating the conclusion of initial removal proceedings.

Nor can the court find that the government materially misled Hernandez-Contreras about his removal options or acted inappropriately in facilitating the filing of his *pro se* motion to reopen. It is substantially true that his options are limited to cooperating with efforts to remove him to third countries, cooperating with efforts to remove him to Mexico, or to failing to cooperate with removal efforts and remaining in indefinite detention. Moreover, the government would not have acted inappropriately by assisting him with filing a motion to reopen and by facilitating its delivery to the immigration court.

At base, the record indicates that the government delayed efforts to remove Hernandez-Contreras to a third country in an effort to accommodate his preference to be removed to Mexico. The court cannot find that the administrative delay caused by such an effort amounts to a good reason to believe that his removal to a third country is

9

not reasonably foreseeable. The government's efforts to accommodate his removal preferences appeared to be reasonable and in good faith, and finding otherwise would likely discourage the government from attempting to accommodate such preferences with respect to other removable individuals. Nor can the court fault the government for failing to act in the few days that have passed since the time to appeal the immigration order has expired.

Hernandez-Contreras also has not adequately demonstrated that countries other than Mexico will refuse to accept him by referencing historically low numbers of third county removals. The recent efforts to remove him to El Salvador, Honduras, and Guatemala suggest that those particular countries might refuse him, but the current administration is seeking third country removals with unprecedented determination and has made substantial efforts to persuade countries to serve as safe third countries.[2] Given this recent and substantial change in policy and significantly increased efforts to remove noncitizens to third countries, the court cannot find that historical patterns

---

[2] *See e.g., D.V.D. v. U.S. Dep't of Homeland Sec.*, 778 F. Supp. 3d 355, 367-38 (D. Mass. 2025) (detailing ICE policy on third country removals). United States Department of State, August 14, 2025, https://www.state.gov/releases/office-of-the-spokesperson/2025/08/secretary-of-state-marco-rubio-paraguayan-foreign-minister-ruben-ramirez-lezcano-and-u-s-deputy-secretary-of-homeland-security-at-the-signing-of-a-memorandum-of-understanding/ ("The Secretary and myself have been very focused on establishing safe third country agreements within Latin America, South America, and even in Africa."); United States Department of State, https://www.state.gov/releases/office-of-the-spokesperson/2025/08/signing-of-a-safe-third-country-agreement-with-paraguay/; United States Department of Homeland Security, Agreement Between the Government of the United States of America and the Government of the Republic of Ecuador Relating to the Transfer of Third-Country Nationals to Ecuador, 90 Fed. R 51376 (issued Nov. 17, 2025).

The court's recent experience also reflects this change in policy. *See Bangamwabu v. English*, 2026 WL 2024247 (N.D. Ind. July 14, 2026) (government requesting acceptance from third countries of Zambia, Tanzania, and Zimbabwe); *Mann v. English*, 2026 WL 1345862 (N.D. Ind. May 14, 2026) (Mexico, Canada, Zimbabwe).

provide good reason to believe that Hernandez-Contreras' removal to a third country will not occur within the reasonably foreseeable future.

Next, Hernandez-Contreras argues that he is entitled to habeas relief because he has not received an individual bond hearing. However, he cites no authority suggesting that bond is appropriate for those in detention pursuant to Section 1231(a)(6).

He also argues that he is entitled to habeas relief because the government has not provided him with an individualized custody review and asks the court to review his custody or to order the government to conduct one in accordance with the regulations. The court lacks sufficient evidence to determine whether or not Hernandez-Contreras' removal to a third country will occur in the reasonably foreseeable future or whether his custody is otherwise justified. Consequently, the court declines to conduct a custody review but will consider whether he is entitled to a custody review from the government.

"[F]ederal agencies are required to follow their own regulations." *Zelaya Diaz v. Rosen*, 986 F.3d 687, 690 (7th Cir. 2021) (citing *Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954)); *see also Samirah v. Holder*, 627 F.3d 652, 664 (7th Cir. 2010) ("[R]ules promulgated by a federal agency, which regulate the rights and interests of others, are controlling upon the agency."). The federal regulations require that the government provide individuals who are subject to a final removal order and who have been re-detained a custody review that "will ordinarily be expected to [commence] within approximately three months after release is revoked." 8 C.F.R. § 241.4(l)(3). There is no indication that the government has initiated or completed a review of Hernandez-Contreras' custody

after six months of detention. Consequently, the court will grant conditional relief on this claim and order the respondents to promptly initiate the custody review process. Only if the government, acting through designated officials, fails to afford that process must Hernandez-Contreras be released. *See Wilkinson v. Dotson*, 544 U.S. 74, 87 (2005) (Scalia, J., concurring) ("Conditional writs enable habeas courts to give [authorities] time to replace an invalid judgment with a valid one, and the consequence when they fail to do so is always release.").

For these reasons, the court:

(1) **DENIES** the petition [ECF 1], except to **CONDITIONALLY ORDER** the Warden to release Cesar Hernandez-Contreras by **July 30, 2026**, only if he remains detained without the initiation of a custody review as required by 8 C.F.R. § 241.4(l)(3); and

(2) **ORDERS** the respondents to file a notice certifying compliance with this order by **July 31, 2026**..

SO ORDERED on July 16, 2026.

　　　　　　　　　　　　　　　　　　/s/*Cristal C. Brisco*
　　　　　　　　　　　　　　　　　　CRISTAL C. BRISCO, JUDGE
　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT COURT

12